IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                 **Plaintiff,**<br><br>    vs.<br><br>**BLAKE RUEL,**<br><br>                 **Defendant.** | 8:21CR235<br><br>**FINDINGS AND<br>RECOMMENDATION** |

      This matter is before the Court on the Motion to Suppress and Request for Hearing (Filing No. 25) filed by Defendant, Blake Ruel. Defendant filed a brief (Filing No. 26) supporting the motion and the government filed a brief in opposition (Filing No. 30). The undersigned magistrate judge held status conferences with counsel on November 2 and 12, 2021, regarding pre-motion hearing matters.

      An evidentiary hearing was held on the motion on December 21, 2021. The transcript of the hearing (TR.) was filed on January 16, 2022. (Filing No. 46). Defendant was present at the hearing with his counsel, Alton E. Mitchell. The government was represented by Assistant United States Attorney, Kelli L. Ceraolo. City of Lincoln Police Officer, Christopher Eirich ("Inv. Eirich"), and Omaha Police Officer, Jodi Sautter ("Officer Sautter"), testified at the hearing. The Court received into evidence the government's Exhibits 1-2 (Officer Sauter's cruiser dash cam video and body-worn camera video, respectively), without objection, Exhibit 3 (Inv. Eirich's affidavit) over Defendant's objection, and Exhibits 101-102 offered by Defendant, without objection. (TR. 6, 25, 33, 49). This matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge recommends that Defendant's motion be denied.

## BACKGROUND

      On September 4, 2020, Inv. Eirich, an investigator with the Lincoln-Lancaster County Narcotics Task Force, conducted a traffic stop of an individual named Ricky Mackelbee. A subsequent search of Mackelbee's vehicle revealed 115 grams of methamphetamine, just under of 2 ounces of cocaine, 10 grams of marijuana, and about $1,090 in cash. In Inv. Eirich's experience, these quantities indicated distribution of drugs. (TR. 12, 21). After Inv. Eirich arrested Mackelbee and searched his phone pursuant to a warrant, Inv. Eirich found messages between Mackelbee and

an individual named "Blake" showing Mackelbee had been "sourcing" methamphetamine to Blake in one ounce to quarter-pound quantities. (TR. 13, 21). Inv. Eirich ran the phone number for Blake in the Lincoln Police Department's records management system and found it was associated with Defendant. (TR. 22). Inv. Eirich was familiar with Defendant because Inv. Eirich had previously been involved in arresting Defendant in 2016 for distribution of a controlled substance. (TR. 12, 20). Inv. Eirich familiarized himself with Defendant's criminal history and found Defendant had prior arrests and convictions related to drug trafficking. (TR. 11-12, 23).

On October 19, 2020, law enforcement were conducting surveillance of a woman named Lacy Northrop and executed a traffic stop of her vehicle. Defendant was a passenger in the vehicle. During a search of Defendant's person, officers recovered methamphetamine. Officers also recovered sales paraphernalia, baggies, a digital scale, and a notebook with names of individuals with amounts paid/owed in the vehicle. During Defendant's interview on that date, he admitted he was in the process of purchasing methamphetamine from Northrop. (TR. 13-14, 24-26; Ex. 101).

On April 8, 2021, law enforcement arrested an individual named Anthony Jackson after conducting controlled buys of methamphetamine. (TR. 15; Ex. 102). During Jackson's interview, he stated he had purchased approximately 21 pounds of methamphetamine between March and April 2021 from two individuals named Alejandra de la Pena and Caitlyn Edwards. (TR. 15). Jackson provided law enforcement with de la Pena and Edwards' phone numbers; law enforcement's review of de la Pena and Edwards' call records showed frequent calls with Defendant's phone number. During their surveillance of de la Pena and Edwards' apartment building in Lincoln on May 7, 2021, law enforcement observed Defendant driving through the parking lot of the building. (TR. 16-17, 46-47, 49-50).

On May 11, 2021, multiple officers from the Omaha Police Department and Lincoln-Lancaster Narcotics task force, including Inv. Eirich, were conducting surveillance of de la Pena and Edwards' residence in Lincoln. (TR. 17). Law enforcement in both agencies kept in contact by radio and telephone throughout their surveillance. (TR. 18). Investigators observed Edwards and de la Pena leave the residence and drive to a car wash in Omaha on 30th and L streets. Shortly thereafter, investigators observed Defendant arrive in a separate vehicle and make contact with de la Pena. Investigators then observed Edwards, de la Pena, and Defendant simultaneously leave the car wash in their two separate vehicles.

Investigators continued their surveillance of de la Pena and Edwards and observed Defendant reconvene with them at a fast-food restaurant. Investigators saw de la Pena, Edwards, and Defendant eat together and use their phones before leaving the fast-food restaurant, again at the same time in their separate vehicles. Investigators continued their surveillance of de la Pena and Edwards and saw Defendant following Edwards' vehicle around a neighborhood before both stopped at a residence near 35th and Redman Ave in Omaha. Investigators observed Defendant exit his vehicle and open his trunk. Inv. Eirich then saw an unidentified black male exit the residence and meet Defendant at the trunk of the car for approximately two minutes before separating. Defendant drove away towards southbound I-75 and Edwards and de la Pena drove in the opposite direction. (TR. 18-19, 41-42). Based on Inv. Eirich's training and experience and investigation up to that point, he believed he had just witnessed drug activity between Defendant and the unidentified male, although he could not see them exchange anything from his vantage point. Investigators thereafter maintained mobile surveillance on Defendant because de la Pena and Edwards' vehicle had a GPS tracker. OPD investigators ultimately requested that a marked unit conduct a traffic stop of Defendant's vehicle. (TR. 19-20, 46).

Officer Sautter[1] was on patrol in a marked unit with her canine and was asked to follow Defendant and conduct a traffic stop. (TR. 54-55). Officer Sautter began following Defendant's vehicle on I-75 and observed his left tires cross over the yellow shoulder line twice. (TR. 56). Officer Sautter intended to initiate a traffic stop of Defendant for that violation, but before she could catch up to his vehicle to initiate the stop, she observed a truck cross into Defendant's lane and hit the passenger side of his car, which then caused a multi-car pile-up on the interstate. (TR. 56). Officer Sautter followed Defendant for approximately half a mile until he pulled over at the next exit. (TR. 56-57). Officer Sautter radioed for backup to handle the vehicles involved in the accident and to direct traffic and to assist her with Defendant. (TR. 57).

Officer Sautter testified a typical traffic accident investigation involves gathering identification from people and vehicles involved, exchanging that information between drivers, running a check for warrants, and discussing whether a tow truck is needed. (TR. 58). Officer Sautter approached Defendant and asked for his license and registration. (TR. 65). Officer Sautter spoke to Defendant about the accident. Defendant stated he was switching lanes, but Officer Sautter thought she saw the truck come into Defendant's lane. Officer Sautter observed that

---

[1] Officer Sautter has been with the OPD for over 19 years and is assigned to the K-9 unit. (TR. 53).

3

Defendant was very nervous, "hyped up," and visibly upset about the damage to his vehicle. Officer Sautter also noticed Defendant had "air fresheners in almost every single vent and hanging," and smelled a very strong odor of air freshener coming from inside the vehicle. Officer Sautter knows from her training and experience that an overwhelming amount of air fresheners could be an attempt to mask the odor of narcotics. Defendant also asked Officer Sautter whether he could "check his speaker box" in the trunk. (TR. 58-59, 65).

Officer Sautter returned to her patrol vehicle to review her dash cam video, which had recorded the collision. Officer Sautter verified Defendant's information and reviewed the dash cam footage, which confirmed Defendant was not at fault for the accident. Officer Sautter returned to Defendant's vehicle and asked Defendant if his vehicle was drivable or whether he needed a tow, and Defendant began assessing the damage. (Ex. 1 at 17:06). Officer Sautter advised Defendant it looked like he was not at fault for the accident, returned his documents, and asked for consent to search his vehicle; Defendant declined. Officer Sautter then walked her drug canine around Defendant's vehicle, and the canine quickly alerted. The total time from the accident and the canine alert was approximately fourteen minutes, with approximately 75 seconds between when Officer Sautter returned Defendant's driver's license and documents (Ex. 1 at 17:07:07) and when the canine alerted to the presence of narcotics (*Id.* at 17:08:21; TR. 60-66). Officer Sautter recovered methamphetamine and other incriminatory items in the subsequent search of Defendant's vehicle.

Defendant has moved to suppress all evidence obtained from the search of his vehicle. Defendant initially argued law enforcement did not have reasonable suspicion to stop or detain him, but at the conclusion of the evidentiary hearing withdrew his argument contesting the initial stop. (TR. 3-5, 75). Defendant argues Officer Sautter unlawfully continued Defendant's detention to conduct the canine sniff without reasonable suspicion after she completed her investigation of the traffic accident, in violation of *Rodriguez v. United States*, 575 U.S. 348 (2015). Therefore, Defendant argues the canine sniff and alert were products of his unlawful detention and any evidence obtained as a result must be suppressed. (TR. 71-64; Filing No. 26).

The government contends Defendant's detention was not extended beyond the time necessary to complete Officer Sautter's investigation into the traffic violations because Officer Sautter's canine was on the scene with her and immediately alerted. The government argues that

4

even if Defendant's detention was extended, Officer Sautter had reasonable suspicion to do so. (TR. 69-71).

## ANALYSIS

Defendant no longer contests the initial stop by Officer Sautter, and the evidence before the Court establishes that, although Officer Sautter may have intended to initiate a traffic stop of Defendant, fate intervened when a truck struck Defendant's vehicle causing a multi-vehicle pile-up on the interstate. (TR. 75). There is no dispute that Officer Sautter was permitted to then make contact with Defendant in the course and scope of an accident investigation. What is disputed is whether Officer Sautter unconstitutionally prolonged Defendant's detention to conduct the canine sniff during that investigation.

"[T]he tolerable duration of police inquires in the traffic-stop context is determined by the seizure's 'mission.'" *United States v. Mosley*, 878 F.3d 246, 253 (8th Cir. 2017)(quoting *Rodriguez*, 575 U.S. at 354). A traffic stop supported by probable cause or reasonable suspicion may "violate the Fourth Amendment if it lasts longer than necessary to effectuate its mission—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 575 U.S. at 354 (internal citation and quotation marks omitted). "The critical question" is "whether conducting the sniff prolongs—i.e., adds time to—the stop." *Id.* at 357.

The evidence before the Court indicates the canine sniff in this case did not prolong the "mission" of Officer Sautter's traffic accident investigation. The total length of time from when Defendant's vehicle was struck to when Officer Sautter's canine alerted was approximately 14 minutes. While the relatively short length of time alone does not automatically mean Defendant's detention was reasonable, it certainly suggests that the canine sniff did not measurably extend the traffic accident investigation. Officer Sautter testified a typical traffic accident investigation involves gathering identification from people and vehicles involved, exchanging that information between drivers, running a check for warrants, and discussing whether a tow truck is needed. At the time Officer Sautter walked her canine around Defendant's vehicle, Officer Sautter had determined Defendant was not at fault for the collision, completed her records check, and returned Defendant's driver's license and other documents to him. However, it still was unclear whether Defendant's car was drivable or whether he would need to wait for a tow truck; additionally, Officer Sautter's back-up officers were still investigating and dealing with the other vehicles

involved in the accident, and information had not yet been exchanged between drivers. Therefore, the traffic accident investigation was not complete at the time of the canine sniff.

However, even if deploying the canine did measurably extend Defendant's detention, Officer Sautter had reasonable suspicion of criminal activity to do so. If an investigating officer has information leading to reasonable suspicion that criminal activity may be afoot, she may justifiably extend a stop. See *United States v. Anguiano*, 795 F.3d 873, 876 (8th Cir. 2015). The court considers the totality of the circumstances when determining whether an officer had reasonable suspicion to extend a traffic stop. *United States v. Pacheco*, 996 F.3d 508, 512 (8th Cir. 2021). Reasonable suspicion is assessed on the totality of the circumstances, and it requires "'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014)(quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). An officer's "hunch," is not enough. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Instead, an officer must have a "particularized and objective basis" for suspecting that a person is engaged in criminal activity. *Id.* at 396-97 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). The "collective knowledge of law enforcement officers conducting an investigation is sufficient to provide reasonable suspicion, and the collective knowledge can be imputed to the individual officer who initiated the traffic stop when there is some communication between the officers." *Mosley*, 878 F.3d at 254 (quoting *United States v. Thompson*, 533 F.3d 964, 969 (8th Cir. 2008); see also, *United States v. Williams*, 429 F.3d 767, 771-72 (8th Cir. 2005)(holding the "collective knowledge of the DEA team was sufficient to provide reasonable suspicion to stop [the defendant's] vehicle, and such knowledge was imputed to the officer at the scene" when the officer received the radio request to conduct the stop).

At the time Officer Sautter made contact with Defendant, LPD and OPD investigators had collective knowledge of several things that gave rise to reasonable suspicion that Defendant was involved in criminal activity. On the date in question, May 11, 2021, investigators in Lincoln were surveilling two individuals, Edwards and de la Pena, after a suspect in a controlled buy stated he had purchased 21 pounds of methamphetamine from them between March and April 2021. The investigators' surveillance of Edwards and de la Pena took them to a car wash in Omaha, where Defendant happened to make contact with de la Pena. Defendant was previously known to investigators. Edwards' and de la Pena's phone records showed frequent calls with a number

6

associated with Defendant and investigators had seen Defendant at de la Pena and Edwards' apartment building in Lincoln a few days before. Investigators also knew Defendant had a criminal history involving arrests and convictions related to drug trafficking, including Inv. Eirich's arrest of Defendant in 2016 and Defendant's arrest in October 2020 where methamphetamine was recovered from his person. Inv. Eirich also had conducted a traffic stop in September 2020 and recovered distribution amounts of methamphetamine and cocaine from a suspect whose phone showed he was sourcing Defendant with large quantities of methamphetamine.

Against that backdrop, investigators' observations of the movements of de la Penda, Edwards, and Defendant gave rise to reasonable suspicion Defendant was involved in criminal activity, specifically, drug distribution. Investigators watched Defendant briefly speak to de la Pena at the car wash before leaving in separate vehicles at the same time. Investigators observed those three individuals meet up again at a fast-food restaurant, before Defendant began following de la Pena and Edwards around an Omaha neighborhood to a residence near 35th and Redman Ave. Investigators then saw Defendant exit his vehicle and open his trunk for a two-minute meeting with an unidentified individual that had exited the residence. Investigators watched Defendant drive away in an opposite direction from de la Pena and Edwards, who headed back to Lincoln. Although investigators were not able to see anything exchange hands, based on Inv. Eirich's training and experience and investigation up to that point, he believed he had just witnessed drug activity between Defendant and the unidentified male. See *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015)("[O]fficers [are permitted] to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.")

Throughout the investigation, LPD and OPD investigators kept in contact by radio and telephone, and one of those investigators asked Officer Sautter to stop Defendant after he left the Redman Ave. residence. (TR. 18-20). This is sufficient to impute the collective knowledge of investigating law enforcement officers to Officer Sautter. See *Mosley*, 878 F.3d at 254. After Officer Sautter made contact with Defendant, she observed he was very nervous and "hyped up." The Eighth Circuit has "often held that nervousness and other subjective perceptions are valid factors supporting reasonable suspicion." *De La Rosa v. White*, 852 F.3d 740, 746 (8th Cir. 2017). Officer Sautter also noticed Defendant had "air fresheners in almost every single vent and hanging," and smelled a very strong odor of air freshener coming from inside the vehicle. Officer

7

Sautter knows from her training and experience that an overwhelming amount of air fresheners could be an attempt to mask the odor of narcotics. See *United States v. Fuse*, 391 F.3d 924, 929 (8th Cir. 2004)(finding strong odor of air freshener can be significant for reasonable suspicion because drug smugglers commonly use air freshener to mask odor of controlled substances). Defendant also asked Officer Sautter whether he could "check his speaker box" in the trunk, which was somewhat suspicious because the damage to his vehicle was on the passenger side. (TR. 60). The totality of the circumstances—both Officer Sautter's personal observations and the collective knowledge of the investigating officers—supplied Officer Sautter with reasonable suspicion that Defendant was engaged in criminal activity. Having not only the traffic accident to process, but also reasonable suspicion of ongoing criminal activity, Officer Sautter was permitted to investigate beyond the scope of the traffic accident itself and to detain Defendant for a reasonable time in the course of that separate investigation. Officer Sautter focused on the task at hand and completed her investigation in a reasonable and expeditious fashion. Under the circumstances, the undersigned magistrate judge finds the canine sniff in this case was not the product of an unconstitutional detention. Upon consideration,

**IT IS HEREBY RECOMMENDED** to Robert F. Rossiter Jr., Chief United States District Court Judge, that Defendant's Motion to Suppress and Request for Hearing (Filing No. 25) be denied.

Dated this 15th day of February, 2022.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.